```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
            -against-                                       :   16-CR-851 (VSB)
                                                            :
ANDRE SPAULDING,                                            :   OPINION & ORDER
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/27/2020__

VERNON S. BRODERICK, United States District Judge:

      Before me is the pro se motion of Andre Spaulding ("Defendant" or "Spaulding") asking me "to intervene to secure [his] release on the grounds of compassionate release," [and] "allow[] [him] to finish [his] sentence in home confinement." (Spaulding Mot. 1.)[1] Specifically, Spaulding asserts that "the coronavirus pandemic has changed the enviro[n]ment surrounding [his] imprison[]ment", and "has created grave concerns about [his] safety and more importantly the safety of [his] family in New York which is a constant worry for [him]." (*Id.*) Because I find that, although the Government has waived any argument that Spaulding has not exhausted his administrative remedies by failing to address Spaulding's Inmate Request form and the response from the Facility Administrator, Spaulding has not met his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release, Defendant's motion for compassionate release is DENIED.

---

[1] "Spaulding Mot." refers to Andre Spaulding's letter motion dated May 1, 2020. (Doc. 283.)

1

## I.     **Background and Procedural History**[2]

A three-count criminal complaint dated October 26, 2016, was filed charging Spaulding and his co-defendants with conspiracy to commit wire fraud, fraudulent use of credit cards, and aggravated identity theft. (Doc. 1.) Specifically, the Complaint charged Spaulding and others (the "Amtrak Ticket Thieves") with a scheme during which they "exchanged the debit and/or credit card numbers and personal identifying information of the Victims via email and other methods", "purchased tickets for Amtrak train travel via the phone-based Amtrak application, the internet, and at Amtrak ticket kiosks using the debit and/or credit card account numbers and personal identifying information of the Victims", and purchased other items, including "gift cards to chain and luxury retail stores." (Compl. ¶¶ 7–8.)

According to the Government, Spaulding "was a central participant in a sophisticated and widespread fraud that caused significant losses and affected thousands of people", a fraud that "operated, at least in part, from the defendant's home", where "[a]gents recovered device-making equipment from [], including machines to press credit cards and blank credit cards." (Govt. Opp. 5.)[3] As part of the investigation, it was discovered that a particular Google email account was "accessed using a single IP Address on at least 70 occasions between January 2016, and April 2016." (PSR ¶ 40.) This IP Address was registered to an apartment leased by Spaulding in Jersey City, New Jersey, and Spaulding had apparently purchased Amtrak train tickets that listed the email account as the billing email address. (*Id.*) Therefore, it was determined that the email account was used by Spaulding. (*Id.*)

Prior to Spaulding's arrest, on April 29, 2016, a search warrant was issued for the email account, and a review of the email communications in the account by law enforcement revealed that

---

[2] The facts contained in this section are taken from the allegations in the complaint filed in this case on October 26, 2016, ("Complaint" or "Comp."), (Doc. 1), Defendant's Presentence Investigation Report ("PSR") filed on February 16, 2018, (Doc. 168), and the Government's letter submitted in opposition to Defendant's motion for compassionate release dated June 22, 2020, (Doc. 290).

[3] "Govt. Opp." refers to the Government's letter submitted in opposition to Defendant's motion for compassionate release dated June 22, 2020. (Doc. 290.)

2

there were "dozens of emails listing debit and/or credit card account numbers." (*Id.* ¶ 41.) It was determined that those emails "listed over 1,000 separate debit and/or credit card numbers", and "also contained multiple emails listing financial account numbers and accompanied by names and aliases of individuals who appeared to be associated with the Amtrak Ticket Thieves", including "an email sent from [the] email [a]ccount[] [that] contained dozens of debit and/or credit card numbers accompanied by the names, cities, states, and zip codes for what appeared to be the true account holders." (*Id.*)

Spaulding was arrested on November 2, 2016, and released on bail that same day. (Docs. 4, 5, 6, 7.) He pleaded guilty on November 28, 2017, pursuant to a plea agreement, to conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. (PSR ¶ 2.) The plea agreement calculated Defendant's Sentencing Guidelines range as 63 to 78 months' imprisonment. (*Id.* ¶ 17.) After considering the factors contained in Title 18, United States Code, Section 3553(a), I sentenced Spaulding to 40 months' imprisonment, three years of supervised release, and ordered him to pay approximately $201,412.70 in restitution to the victims of his offense. (*See generally* Doc. 253.) Spaulding is currently housed in CI Moshannon Valley ("Moshannon"), and his release date is December 29, 2021. *Find an Inmate*, Fed. Bureau of Prisons (last visited August 3, 2020), https://www.bop.gov/inmateloc/.

Defendant's motion for compassionate release dated May 1, 2020, was filed on May 20, 2020. The Government filed its opposition to Defendant's motion on June 19, 2020, and Defendant's reply dated June 30, 2020, was filed on July 17, 2020, (Reply)[4].

---

[4] "Reply" refers to Defendant's letter in reply to the Government's opposition dated July 17, 2020. (Doc. 292.)

3

## II.  Discussion

Spaulding asserts that COVID-19[5] has made his imprisonment more dangerous, and has changed the circumstances and safety concerns he has for his family.  (Spaulding Mot. 1.)  Specifically, Defendant identifies the basis for his concern as:  (1) the general inability of prisons to protect inmates from COVID-19; (2) the specific living conditions at Moshannon; and (3) the fact that his wife is the sole source of income and effectively the sole caregiver for their daughter—who allegedly suffers from various health issues including asthma—is at risk but must go to work each day facing possible exposure to COVID-19.  (*Id*. at 1–2.)  Finally, Spaulding argues that these concerns can be addressed or eliminated if his sentence is reduced and he is released and placed on home confinement.  Specifically, he states:

> Home confinement would remove me from the concerntrated [sic] risk of infection created by my living conditions.  Home confinement would allow me to become the caregiver for our daughter and manage her special needs.  Home confinement would remove my wife's conflict by allowing her to work uninterupted [sic] and care for her in the sad event that she becomes infected.

(*Id*. at 2)

In opposition, the Government argues that I should deny Spaulding's motion "[b]ecause [he] has not even submitted an application to the warden of his facility, let alone waited 30 days for a response, [I] lack[] statutory authority to grant relief", and "there are no 'extraordinary and compelling reasons' justifying the defendant's immediate release."  (Govt. Opp. 1.)  Specifically, the Government argues that "Spaulding does not indicate whether he has filed any request for compassionate release with the Bureau of Prisons ('BOP') and does not indicate the status of any such request", and the Government then states that it "ha[d] conferred with BOP and understands that BOP has no record of any request for compassionate release made by or on behalf of Spaulding." (Govt. Opp. 3-4.)  The Government also argues that a consideration of the Section 3553(a) factors

---

[5] "COVID-19" refers to the coronavirus disease 2019.  *See generally Coronavirus Disease 2019 (COVID-19), Frequently Asked Questions*, Centers for Disease Control and Prevention (updated Aug. 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

4

militate against Defendant's release. (*Id.* 5-6.)

Because—as discussed below—Spaulding did submit a document to the BOP that could be construed as a request for compassionate release and I do not have the Government's position related to this document, I assume for the purposes of this motion, without making a factual or legal finding, that the Government has waived any argument that Spaulding has not exhausted his administrative remedies. Therefore, I consider the substance of his motion, and find that Spaulding has not met his burden to establish that extraordinary and compelling reasons exist for the reduction of his sentence and his release, and the Section 3553(a) factors counsel against granting the relief Spaulding seeks.

### A.     *Applicable Law*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[6] 18 U.S.C. § 3582(c)(1)(A).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf. *See* U.S.S.G. § 1B1.13; *see also Gotti*, 433 F. Supp. 3d at 614. However, in December 2018, Congress passed the First Step Act, which did away with BOP's

---

[6] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act. *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, *2 (S.D.N.Y. Apr. 3, 2020). The relevant section provides that a court may reduce the term of imprisonment if (1) "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); (2) "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id.* § 1B1.13 Application Note 1. Further, Defendant, as proponent of the motion, bears the burden of proving that extraordinary and compelling reasons exist. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting *Butler*, 970 F.2d at 1026)); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes," *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

"The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). There are two types of exhaustion requirements: jurisdictional ones and non-jurisdictional ones. Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet squarely answered the question of whether the exhaustion requirement of § 3582(c) is jurisdictional.[7] *Monzon*, 2020 WL 550220, at *2. As I have previously held, *see United*

---

[7] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013) (considering section 3582(c) a jurisdictional rule); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *United States v. Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010); *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *and United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *with United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (considering section 3582(c) a claim-processing rule); *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017); *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015); *and United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012). And while the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13,

*States v. Hart*, 17 CR. 248 (VSB), 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020), it does not matter whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, because its exhaustion requirement is clearly statutory and therefore mandatory. *See also, United States v. Ng Lap Seng,* --- F. Supp. 3d. ---, No. S5 15-CR-706 (VSB), 2020 WL 2301202, *5 (S.D.N.Y. May 8, 2020) (finding Section 3582(c)(1)(A)'s exhaustion requirement to be mandatory).

    **B.**    *Application*

        1. **Exhaustion**

Here, with regard to exhaustion, the Government asserts that Spaulding did not demonstrate in his initial filing (1) that he had submitted a request to the BOP for compassionate release, (2) the status of any such submission, or (3) that he waited 30 days for a response. (Govt. Opp. 1, 3.) The Government—in an apparent attempt to create the inference that Spaulding had not made a request for compassionate release to the BOP—then states that it "ha[d] conferred with BOP and understands that BOP has no record of any request for compassionate release made by or on behalf of Spaulding." (Govt. Opp. 3–4.) However, in his reply, Defendant produced a copy of an Inmate Request to a Staff Member form addressed to "Warden (L.T. Oddo)" which was stamped received on April 27, 2020, (the "Request"), requesting to be released to "home confinement due to the vast cases of the COVID-19." (Doc. 292 at 7.)[8] In response to the Request, L.T. Oddo, the Facility Administrator, sent a memorandum to Spaulding, dated May 4, 2020, denying his request. Specifically, the memorandum stated that

> During the designation process, the Bureau of Prisons, Designation and Sentence Computation Center, applied the Public Safety Factor of Deportable Alien, due to your citizenship to Jamaica. A decision by immigration officials in regards to your deportation status remains pending and you must be made available for IHP processing before the Executive Office of Immigration Review. If an inmate has an ICE Detainer or the Public Safety Factor of Deportable Alien, the inmate is ineligible for community based programs to include halfway house, home confinement, and compassionate releases; however, if a decision is made in regards to your deportation status and you

---

2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

[8] Because the pages of this document are not all numbered, reference to page numbers refers to the numbers assigned by the ECF system.

are determined to be not deportable, you become eligible for those programs.

(*Id*. at 9.)

Spaulding clearly submitted a document to the BOP that could be construed as a request for compassionate release, he appears to have received a response to his request within 30-days of the request, and more than 30-days has elapsed since he filed his request. Whether Spaulding's submission was or would be considered a request for compassionate release by the BOP or a request for some other type of relief is not clear because I do not have the benefit of the Government's position. Therefore, I assume for the purposes of this motion, without making a factual or legal finding, that the Government has waived any argument that Spaulding has not exhausted his administrative remedies.

### 2. Extraordinary and Compelling Circumstances

I now turn to the substance of Defendant's motion for compassionate release. For the reasons that follow, on the current record I find that Defendant has not met his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release.

With regard to Spaulding's incarceration at Moshannon and COVID-19, Spaulding generally argues that "once the coronavirus enters a prison it spreads like wildfire[,] [t]he risk presented by asymptomatic carriers is especially high", and that the "risk will remain throughout [his] sentence as the virus is likely to persist as a seasonal phenomenon." (Spaulding Mot. 1–2.) He also describes his living conditions at Moshannon and claims that they make social distancing "impossible." (*Id*. at 1.) The circumstances Spaulding describes are no different than the circumstances of every inmate at Moshannon. In addition, Spaulding—at the time his PSR was prepared—was 30 years old, "reported being in good health his entire life", had "never been hospitalized", "ha[d] no chronic conditions, and [was] taking no medications." (PSR ¶ 115.) Finally, Spaulding does not argue or identify any conditions that place him at an increased risk for serious illness or death should he contract COVID-19. Because Spaulding has not demonstrated (1) his circumstances are any different than any other inmate at Moshannon, and (2) he is at increased risk of serious illness or death should he contract

8

COVID-19, I find that Defendant has failed to meet his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release.

Defendant also seeks compassionate release based upon changed family circumstances. Specifically, Spaulding points out that his wife is the sole source of income for his family and effectively the sole caregiver for their daughter—who allegedly suffers from various health issues, including asthma.[9] He also argues that because his wife must go to work each day, she is at risk to being exposed to COVID-19, and argues that although his mother-in-law has provided care for his daughter that she has under gone chemotherapy and still recovering thus increasing her risk and problems for his family. (*Id*. at 1–2.) As an initial matter, the financial issues and issues related to Defendant's daughter have not changed since I was asked to and did consider those issues at the time of sentencing. (Doc. 242 at 4–5; Doc. 253 at 17, 19–21, 30.) In other words, they are not changed circumstances.

The only changed circumstance is the COVID-19 pandemic and its impact on Defendant's family. According to Spaulding several of his family members contracted the virus, but all have recovered or are recovering. (Doc. 292, at 4.) The impact of the COVID-19 pandemic on Defendant and his family are not unique and no doubt many inmates face the same difficulties and hardships. Therefore, I find that these changed circumstances do not amount to compelling and extraordinary reasons justifying a reduction of Defendant's sentence and his release.

### 3. Section 3553(a)

Granting Spaulding's compassionate release motion would require reducing his sentence to time served which would result in a substantial reduction in his sentence. According to Spaulding's plea agreement, the initial guideline calculation he faced called for a sentence of between 63 to 78 months' imprisonment. After considering the factors under 18 U.S.C. § 3553(a), I sentenced

---

[9] Although Defendant claims that his wife is now the sole source of income for his family, Defendant is the co-owner of a restaurant with several locations that has remained open during the COVID-19 pandemic, and employs 26 people. (Doc. 292 at 2, 8.) As a co-owner of this business it seems likely that Defendant receives some compensation from the business.

Spaulding to 40 months' imprisonment—a substantial variance from Defendant's Guidelines Range. Spaulding is scheduled to be released on December 29, 2021; therefore, there are approximately 16 months remaining on his sentence. I do not find that the circumstances have changed, including due to the current health crises due to COVID-19, so dramatically as to warrant a sentence of time served.

Defendant was a central participant in the Amtrak and debit/credit card scheme. In fact, at the time of Spaulding's arrest at his home agents recovered, among other things, device-making equipment, including machines to press credit cards and blank credit cards. (Govt. Opp. 5.) In addition, an email account used by Spaulding was used to purchase Amtrak train tickets. (PSR ¶ 40.) A search of this email account revealed that there were "dozens of emails listing debit and/or credit card account numbers." (*Id.* ¶ 41.) Moreover, it was determined that those emails "listed over 1,000 separate debit and/or credit card numbers", and "also contained multiple emails listing financial account numbers and accompanied by names and aliases of individuals who appeared to be associated with the Amtrak Ticket Thieves", including "an email sent from [the] email [a]ccount[] [that] contained dozens of debit and/or credit card numbers accompanied by the names, cities, states, and zip codes for what appeared to be the true account holders." (*Id.*) This suggests that Spaulding played a pivotal role in the scheme.[10] Defendant points out that he has taken steps he claims is evidence his rehabilitation, including not committing or being charged with disciplinary infractions, making payments towards restitution, and filing his business and personal income tax returns. (Reply 6.) Although Defendant's actions are admirable, when viewed in light of his criminal conduct and considering the factors contained in Section 3553(a), I find that they are insufficient to warrant a reduction in his sentence.

---

[10] I note that Defendant has not addressed his role in the underlying offense, including the overwhelming evidence seized prior to and at the time of his arrest that demonstrated how deeply he was involved in the Amtrak and debit/credit card scheme.

### III. **Conclusion**

For the reasons stated above, because I find that Defendant has not sufficiently established extraordinary and compelling circumstances justifying the reduction in his sentence and his release from custody and that the Section 3553(a) factors counsel against granting the relief Spaulding seeks, Defendant's motion for compassionate release is DENIED.

The Clerk's Office is directed to terminate the gavel pending at docket entry 283.

SO ORDERED.

Dated:  August 27, 2020
        New York, New York

*Vernon S. Broderick*
United States District Judge